IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHARLES E. TYSON and
LAURENCE WOODS,

        Plaintiffs,

   v.

SHERIFF GUISTO and
SGT. LUNA,

        Defendants.

No. CV 06-1415-MO

OPINION AND ORDER

**MOSMAN, J.**,

    Charles E. Tyson and Laurence Woods, who are both practicing Muslims, allege the defendants violated the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") when they (1) did not allow Jum'ah prayer at the Multnomah County Detention Center ("MCDC") on Fridays; (2) did not hire an imam to lead Jum'ah prayer; and (3) allowed non-Muslims to prepare Halal meals.  The defendants filed a Motion for Summary Judgment (#80) and argue: (1) they now allow Jum'ah prayer on Fridays, and RLUIPA's safe harbor provision applies; (2) neither RLUIPA nor the First Amendment requires that they hire an imam; and (3) they prepare the Halal meals appropriately.  Because Mr. Tyson's and Mr. Woods's claims fail under both RLUIPA and the First Amendment, I GRANT the defendants' Motion for Summary Judgment.

## BACKGROUND

Mr. Tyson and Mr. Woods were inmates at MCDC and filed this action *pro se*.  While they were at MCDC, Muslim inmates could not participate in Jum'ah prayer on Fridays; instead, they could participate in Jum'ah prayer on Sundays.  Jum'ah prayer is a congregational prayer led by an imam and held every Friday.  Mr. Tyson and Mr. Woods allege this arrangement violated their rights.  They also allege the defendants should hire an imam to lead the Jum'ah prayer. (Am. Compl. (#30).)  No imam is on MCDC's payroll; however, volunteer imams may come to MCDC to lead Jum'ah prayer.  (Moyer Decl. (#83) ¶¶ 6-9.)

Mr. Tyson and Mr. Woods also allege the defendants do not prepare Halal meals appropriately.  They claim Muslims must prepare Halal meals, and Mr. Woods also describes an incident when he found a hair in his Halal meal.  They seek money damages and equitable relief. (Am. Compl. (#30).)

The defendants filed a Motion for Summary Judgment (#80).  Neither Mr. Tyson nor Mr. Woods initially responded to the Motion, and I issued an Order to Show Cause (#86).  Mr. Woods responded with a Motion for Extension of Time (#88) until February 29, 2008, and I granted that request; he filed his response on March 3, 2008.  Mr. Tyson never filed a response.

## DISCUSSION

### I.    <u>Standard</u>

Summary judgment is proper when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  If the movant initially shows that no genuine issue of fact exists for trial, the non-moving party cannot then rest on the

pleadings; "rather, its response must . . . set out specific facts showing a genuine issue for trial. If

the opposing party does not so respond, summary judgment should, if appropriate, be entered

against that party." *Id.* 56(e)(2). The court views the record in the light most favorable to the

non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). If "the record

taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is

no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

587 (1986) (citation omitted).

## II.    <u>RLUIPA</u>

Mr. Tyson and Mr. Woods allege the defendants violated RLUIPA, which protects an

inmate's ability to exercise his religion. It states:

> No government shall impose a substantial burden on the religious exercise of a
> person residing in or confined to an institution . . . even if the burden results from
> a rule of general applicability, unless the government demonstrates that imposition
> of the burden on that person—
> > (1)    is in furtherance of a compelling governmental interest; and
> > (2)    is the least restrictive means of furthering that compelling
> > governmental interest.

42 U.S.C. § 2000cc-1(a). Under RLUIPA, a plaintiff has the initial "burden of persuasion on

whether the law . . . or government practice that is challenged . . . substantially burdens the

plaintiff's exercise of religion." *Id.* § 2000cc-2(b). If a plaintiff sustains that burden, the

government then has the burden of persuasion. *See id.* Courts, however, should apply RLUIPA's

"standard with 'due deference to the experience and expertise of prison and jail administrators in

establishing necessary regulations and procedures to maintain good order, security and discipline,

PAGE 3 OPINION AND ORDER

consistent with consideration of costs and limited resources.'" *Cutter v. Wilkinson*, 544 U.S. 709,

723 (2005) (quoting S. Rep. No. 103-111, at 10 (1993)).[1]

In my analysis below, I assume, without deciding, that the regulations at issue impose a

substantial burden on Mr. Tyson's and Mr. Woods's exercise of their religion.

**A.    *Participating in Jum'ah Prayer***

The defendants argue RLUIPA's safe harbor provision applies and the plaintiffs' Jum'ah

prayer claim is now moot.  RLUIPA's safe harbor provision states:

> A government may avoid the preemptive force of any provision of this chapter by
> changing the policy or practice that results in a substantial burden on religious
> exercise, by retaining the policy or practice and exempting the substantially
> burdened religious exercise, by providing exemptions from the policy or practice
> for applications that substantially burden religious exercise, or by any other means
> that eliminates the substantial burden.

42 U.S.C. § 2000cc-3(e).  This provision gives the government agency discretion "to take

corrective action to eliminate any violation of the statutory provisions . . . and thereby preempt

liability under RLUIPA." *Boles v. Neet*, 402 F. Supp. 2d 1237, 1241 (D. Colo. 2005) (citing

*Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 762 (7th Cir. 2003))

(holding a change in a prison policy rendered the plaintiff's RLUIPA claim moot).

Here, Muslim inmates were allowed to participate in Jum'ah prayer on Sundays, but not

Fridays, because MCDC "was undergoing significant renovations."  (Defs.' Mem. in Supp.

---

[1] Under RLUIPA, a plaintiff may "obtain appropriate relief against a government."  42
U.S.C. § 2000cc-2(a).  Courts are divided over whether "appropriate relief" includes only
declaratory and injunctive relief, or also includes monetary relief. *See Smith v. Allen*, 502 F.3d
1255, 1270 (11th Cir. 2007) (discussing the division of authority).  I do not opine on the issue
because Mr. Tyson's and Mr. Woods's RLUIPA claims fail.

PAGE 4 OPINION AND ORDER

Summ. J. (#81) 6 (citing Yankee Decl. (#85) ¶¶ 9-10).)  The renovations are now complete, and

Muslim inmates can participate in Jum'ah prayer on Fridays.  (Yankee Decl. (#85) ¶ 13.)

Consequently, the safe harbor provision applies, and Mr. Tyson's and Mr. Woods's claim is now

moot.  *See Boles*, 402 F. Supp. 2d 1237.

> Even if the safe harbor provision did not apply, this claim still fails because the

defendants have a compelling interest and MCDC's policy is the least restrictive alternative.

First, the defendants have a compelling interest in maintaining the safety and security of MCDC.

*See Pell v. Procunier*, 417 U.S. 817, 823 (1974) ("[C]entral to all other corrections goals is the

institutional consideration of internal security within the corrections facilities themselves.").

More specifically, the defendants had a compelling interest in maintaining MCDC's safety and

security on Fridays during MCDC's renovation.

> Second, MCDC's policy was the least restrictive alternative given the circumstances.  The

policy was the least restrictive alternative only if "[p]rison officials . . . show that they 'actually

considered and rejected the efficacy of less restrictive measures before adopting the challenged

practice.'  If prison officials meet that standard, the prison regulation passes muster under

RLUIPA . . . ."  *Greene v. Solano County Jail*, 513 F.3d 982, 990 (9th Cir. 2008) (quoting

*Warsoldier v. Woodford*, 418 F.3d 989, 999 (9th Cir. 2005)).

> Here, MCDC officials considered other alternatives.  Captain Linda Yankee's declaration

states:

> The majority of activity within MCDC occurs during the work week.  . . .
> [I]nmates are transported to and from court appearances . . . .  [I]nmates are
> meeting with attorneys, receiving visitors, and being processed for intake or
> release. . . .
>          . . . .

> During the renovation of MCDC, we have not had the space available to provide Muslim inmates with a room on Fridays to hold group prayer. Moreover, due to the constant movement and activity within the facility on a typical Friday, the gathering of groups of inmates would present a security risk.
>
> In an effort to accommodate Muslim inmate's [sic] request for a room in which to hold group prayer, I have made a recreation room available every Sunday to Muslim inmates to hold their group prayer. The room is not available on Fridays. Moreover, in my estimation as Facility Commander, during the renovation, a group prayer on Friday would be disruptive and compromise the safety, security, and orderly operation of the facility.

(Yankee Decl. (#85) ¶¶ 7-12.) Thus, the defendants considered allowing Muslims to hold Jum'ah prayer on Fridays, but they determined they did not have "the space available to provide Muslim inmates with a room on Fridays"[2] during the "significant interior renovations." (*Id.*) The defendants therefore allowed Muslims to participate in Jum'ah prayer on Sundays. Given the circumstances, this was the least restrictive alternative. Mr. Tyson's and Mr. Woods's claim therefore fails.

## B. *Hiring an Imam*

Mr. Woods also argues the defendants should "bring and Iman [sic] into MCDC on Friday, to lead the prayer." (Resp. to Defs.' Mot. for Summ. J. (#91) 14.) The defendants state: "The sheriff's office has a limited budget and consequently depends on a number of organizations and individuals to provide religious services and support within the County's jails." (Defs.' Mem.

---

[2] In his opposition to the Motion for Summary Judgment, Mr. Woods argues Jewish and Christian inmates were allowed to gather in groups for prayers. (Resp. to Defs.' Mot. for Summ. J. (#91) 7.) However, he does not identify any evidence that those inmates gathered in groups on Fridays.

PAGE 6 OPINION AND ORDER

in Supp. Summ. J. (#81) 5 (citing Moyer Decl. (#83) ¶ 6).)  Muslim inmates are therefore not

able to participate in Jum'ah prayer on Fridays unless a volunteer imam leads the prayer.[3]  (*Id.*)

RLUIPA does not require that the defendants hire an imam to lead Jum'ah prayer.  First,

the defendants have a compelling interest in meeting their budgetary constraints.  *See Cutter*, 544

U.S. at 723; *Spruel v. Clarke*, No. C06-5021RJB, 2007 WL 1577729, at *6 (W.D. Wash. May

31, 2007).  Second, because they are unable to hire an imam, they rely on volunteer imams.

Given their limited monetary resources, this is the least restrictive alternative.  *See Al-Alamin v.*

*Gramley*, 926 F.2d 680, 687 (7th Cir. 1991) ("The law clearly does not mandate [correctional

institutions] to pay for a full-time imam.").  Therefore, this claim also fails.

### C.    *Preparing Halal Meals*

Mr. Woods argues non-Muslims cannot prepare Halal meals.  He states: "The Devil,

Satan, . . . lives inside of people, they do bad deeds . . . so, according to [the defendants], the

devil can prepare Halal meals, right?  WRONG!"  (Resp. to Defs.' Mot. for Summ. J. (#91) 15.)

However, the defendants provide evidence that Islamic law allows non-Muslims to prepare Halal

meals.  (Imam Toure Decl. (#84) ¶ 9 ("Islamic law does not require that the preparer of the Halal

meal be a believer in the Islamic faith.").)  Neither Mr. Tyson nor Mr. Woods provides evidence

that Halal meals must be prepared by Muslims.

Even assuming Mr. Tyson and Mr. Woods could produce evidence that only Muslims can

prepare Halal meals, this claim still fails.  Applying Mr. Tyson's and Mr. Woods's version of the

tenets of the Muslim faith would mean the defendants "would need [to] hire all Muslim staff to

---

[3] MCDC has a policy "that inmates cannot lead other inmates in prayer services."  (Moyer
Decl. (#83) ¶ 9.)  Mr. Tyson and Mr. Woods are not challenging that policy.

handle and prepare food if a . . . Muslim were eating the food." *Spruel*, 2007 WL 1577729, at

\*7.  RLUIPA simply does not warrant or mandate that, because correctional institutions do not

have the resources to make such accommodations. *Id.*  Thus, Mr. Tyson's and Mr. Woods's

claim that Halal meals must be prepared by Muslims fails.[4]

## III.    First Amendment

Mr. Tyson and Mr. Woods also allege the defendants violated their First Amendment

rights.  Before Congress enacted RLUIPA, a regulation that impinged inmates' First Amendment

rights was valid "if it [was] reasonably related to legitimate penological interests." *Turner v.*

*Safley*, 482 U.S. 78, 89 (1987), *superseded by statute* Religious Land Use and Institutionalized

Persons Act of 2000, Pub. L. No. 106-274, 114 Stat. 803 (codified at 42 U.S.C. § 2000cc-1(a)),

*as recognized in Warsoldier*, 418 F.3d at 994.  However, Congress "replac[ed] the 'legitimate

penological interest' standard . . . with the 'compelling governmental interest' and 'least restrictive

means' tests codified at 42 U.S.C. § 2000cc-1(a)." *Warsoldier*, 418 F.3d at 994 (citations

omitted).  Thus, if Mr. Tyson's and Mr. Woods's claims fail under an RLUIPA analysis, they also

fail under a First Amendment analysis.

## IV.    Other Claims

Mr. Tyson and Mr. Woods also allege violations of the Equal Protection Clause, Due

Process Clause, Establishment Clause, Eighth Amendment, and the Oregon Constitution.  (Resp.

---

[4] Mr. Woods also claims that the defendants violated RLUIPA because he found a hair in his Halal meal.  (Am. Compl. (#30).)  Mr. Woods fails to demonstrate how finding one hair in one meal constitutes a substantial burden on his religious exercise; therefore, this incident does not support an RLUIPA claim.

PAGE 8 OPINION AND ORDER

to Defs.' Mot. for Summ. J. (#91) 2.)  However, they have not identified any evidence that could

support such allegations, and I cannot find any in the record.  Thus, they have not met their

burden, and these other claims also fail.

## CONCLUSION

Based on the foregoing, I GRANT the defendants' Motion for Summary Judgment (#80).[5]

## OTHER PENDING MOTIONS

Mr. Woods has filed a Motion to Sever (#92) and a Motion to Compel (#101).  Based on

the foregoing, I DISMISS both motions as moot.

IT IS SO ORDERED.

DATED this  27th  day of June, 2008.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Court

---

[5] The defendants also argue: (1) they are not individually liable; (2) Sheriff Guisto is not liable in his official capacity; and (3) they are qualifiedly immune.  (*See* Defs.' Mem. in Supp. Summ. J. (#81) 8-10.)  Because of my rulings, I find it unnecessary to address these arguments.

PAGE 9 OPINION AND ORDER