IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **CHARLES E. TYSON; LAURENCE WOODS**, | Civil Case No. 06-1415-KI |
| Plaintiffs, | OPINION AND ORDER |
| vs. | |
| **SHERIFF GIUSTO; SGT. LUNA**, | |
| Defendants. | |

Laurence Woods
311 N. Jessup
Portland, OR 97217

    Pro Se Plaintiff

Agnes Sowle, County Attorney
for Multnomah County, Oregon

Stephen L. Madkour
Assistant County Attorney
Office of Multnomah County Attorney
501 Se Hawthorne Blvd., Suite 500
Portland, Oregon  97214

    Attorneys for Defendants

KING, Judge:

This is a case in which this Court granted summary judgment, and which the Ninth Circuit affirmed in part, reversed in part and remanded.  After appeal, the only remaining plaintiff is Laurence Woods[1] who brings a claim for religious discrimination against the only remaining defendant, former Sheriff Bernie Giusto[2] in both his official and individual capacity.  Before me is defendant's Motion for Summary Judgment (#134).  For the following reasons, I deny in part and grant in part.

## BACKGROUND

After his appeal, Woods's only remaining claim is based on religious discrimination under both the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA").[3]  Woods is Muslim and was incarcerated at Multnomah County Detention Center

---

[1] Charles Tyson neither responded to the defendant's first Motion for Summary Judgment nor appealed the dismissal of his case.  He is no longer a plaintiff in this case.

[2] The other defendant was Sergeant Luna whom the plaintiffs alleged allowed non-Muslims to prepare Halal meals.  The Ninth Circuit affirmed the dismissal of that claim.  I also correct the spelling of former Sheriff Giusto's name.

[3] Woods challenged only his inability to pray at MCDC (he also refers to it as the "Justice Center") in his Complaint.  Accordingly, he may not bring in evidence about an alleged "violation of the settlement agreement" when a Sergeant Hasson "stopped me from praying in the prayer area at Inverness Jail."  Pl.'s Mem. in Opp. to Summ. J. at 4.  Additionally, Woods makes several references to race discrimination and to other alleged constitutional violations.  The only

("MCDC").  He alleges a claim of religious discrimination for MCDC's denial of Jum'ah prayer.

Jum'ah prayer is congregational prayer led by an imam and traditionally held every Friday.

Volunteer imams come to MCDC to lead Jum'ah prayer.

The Ninth Circuit remanded with very specific findings about the remaining factual issues.  Specifically,

> The district court properly concluded that Woods's inability to participate in Jum'ah prayers at Multnomah County Detention Center ("MCDC") substantially burdened his religious exercise.  See [Shakur v. Schriro, 514 F.3d 878, 888 (9th Cir. 2008)].  Woods also raised a triable issue as to whether the government satisfied its burden to show that the restriction furthered a compelling government interest and was the least restrictive means.  See id. (stating government's burden under RLUIPA).  The Sheriff submitted evidence that security concerns and renovations at MCDC on unspecified dates between 2005 and 2008 made it impossible to permit Friday Jum'ah prayers to be held there.  Woods submitted evidence that the prohibition on Jum'ah prayers was applied to him prior to the renovations and that Christian inmates were permitted to have daily group prayer during the renovations.  Further, although the Sheriff offered evidence that the volunteer imam was unreliable, he did not offer evidence that the imam was not available for Jum'ah prayer on the occasions that Woods was detained at MCDC.  See id. at 889-90 (setting forth the evidentiary standards and burden of persuasion for this type of showing).  We therefore reverse the district court's summary judgment as to the Jum'ah prayer claim.

Tyson v. Guisto, 360 Fed. Appx. 900, 901 (9th Cir. 2009) ("Tyson").

While Woods was an inmate at MCDC,[4] MCDC did not set aside a separate room for Woods to participate in Jum'ah prayer on Fridays because, due to space constraints, the detention center is unable to handle any group of this nature during the work week.  All non-essential

---

claims are those identified by the Ninth Circuit and remanded to this court for trial:  a claim for religious discrimination under RLUIPA and the First Amendment.

[4]I am confused by defendant's report that Woods was incarcerated from March 30, 2007 to May 22, 2007, since Woods filed his lawsuit in September 2006.  Woods reports he was incarcerated in other years, but does not specify where.  For purposes of this lawsuit, it matters only when Woods was incarcerated at MCDC.

Page 3 - OPINION AND ORDER

weekday operations are restricted or are rescheduled to weekends. Instead, Woods was permitted to participate in group prayer on Sundays if a volunteer imam was present. According to MCDC, Woods could always pray individually in his cell, in the dorm, or in an informal group in the recreation areas. No formal Christian services are performed on Fridays.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the evidence is viewed in the light most favorable to the nonmoving party. Universal Health Services, Inc. v. Thompson, 363 F.3d 1013, 1019 (9th Cir. 2004).

## DISCUSSION

I.  Plaintiff's RLUIPA Claim

RLUIPA states:

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person --

    (1)    is in furtherance of a compelling governmental interest; and

    (2)    is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). RLUIPA "protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." Cutter v. Wilkinson, 544 U.S. 709, 721 (2005).

      A.      Substantial Burden on Religious Exercise

Under RLUIPA, the plaintiff has the initial "burden of persuasion on whether the law . . . or government practice that is challenged . . . substantially burdens the plaintiff's exercise of religion." 42 U.S.C. § 2000cc-2(b). If the plaintiff satisfies that burden, the government has the burden of persuasion. Id. Judge Mosman "assume[d], without deciding, that the regulations at issue impose a substantial burden on" Woods's exercise of his religion. Tyson v. Guisto, No. CV 06-1415-MO, 2008 WL 2673371, at *2 (D. Or. June 27, 2008).

As I set forth above, the Ninth Circuit held, "The district court properly concluded that Woods's inability to participate in Jum'ah prayers at Multnomah County Detention Center ("MCDC") substantially burdened his religious exercise." Tyson, 360 Fed. Appx. at 901.

Defendant argues that Woods has not shown a substantial burden on his ability to exercise his religion. According to defendant, Woods needs to provide evidence that defendant pressured him "to modify his behavior and violate his beliefs" and that the jail policy "intentionally puts significant pressure on inmates to abandon their religious beliefs[.]" Warsoldier v. Woodford, 418 F.3d 989, 994 (9th Cir. 2005). Defendant does not discuss in its briefing the meaning of the Ninth Circuit's statement that Woods's inability to participate in Jum'ah prayer substantially burdened his exercise of religion. At the hearing, defendant argued that the Ninth Circuit overstated the district court's holding.

Page 5 - OPINION AND ORDER

In its brief to the Ninth Circuit, defendant put the issue squarely before the Ninth Circuit, arguing that Woods's religion was not substantially burdened. Although its language was somewhat clumsy, the Ninth Circuit resolved the issue in favor of Woods.

B. Compelling Government Interest

Defendant contends it has a compelling government interest in ensuring the safety and security of the detention center.

As I set forth above, the Ninth Circuit commented that the

> Sheriff submitted evidence that security concerns and renovations at MCDC on unspecified dates between 2005 and 2008 made it impossible to permit Friday Jum'ah prayers to be held there. Woods submitted evidence that the prohibition on Jum'ah prayers was applied to him prior to the renovations and that Christian inmates were permitted to have daily group prayer during the renovations. Further, although the Sheriff offered evidence that the volunteer imam was unreliable, he did not offer evidence that the imam was not available for Jum'ah prayer on the occasions that Woods was detained at MCDC.

Tyson, 360 Fed. Appx. at 901.

Defendant provides evidence that MCDC is a maximum-security detention facility that consistently exceeds its capacity; it processed approximately 32,000 inmates in 2008. The average length of stay for an inmate is 18 days. Defendant asserts that many activities take place during the work week such as: transporting inmates to court, medical appointments, laundry exchange, linen exchange, medication rounds, food service, food deliveries, inmate walks and access to law libraries, and meetings with attorneys and visitors. The administrators of the facility attempt to limit other activities taking place there to minimize chaos and the need for additional corrections officers. Additionally, defendant contends there is no physical place to

provide Muslim inmates, or any other group, with a room on Fridays in which to hold prayer. Chaplain Lewis Kyle testifies that no organized Christian service takes place on Friday.

Woods's request is not, however, that MCDC set aside a special room in which he and his fellow Muslims can pray on Friday. His demand is that he and his fellow Muslims be permitted to pray in the units with a volunteer imam, just as the Christians do. According to Woods's declaration, MCDC permitted Christians to pray together in groups in their units every day with a volunteer Christian chaplain. Since defendant does not explain what it considers an "organized" service, I find that a material issue of fact remains as to whether "Christian inmates were permitted to have daily group prayer[.]" Tyson, 360 Fed. Appx. at 901. Accordingly, since defendant has not demonstrated any security concerns with respect to allowing a volunteer imam to lead congregational prayer in the units on Friday, the government has not met its burden of showing a compelling interest in burdening Woods's religious exercise by refusing to accommodate him in allowing group prayer in the units.

Defendant contends MCDC has been unable to find reliable volunteer Muslim imams to lead the prayer. It states that inmates are not permitted to lead prayer because corrections officers do not want inmates to assume control or authority over other inmates. Defendant reports that two imams volunteer to lead group prayer (and have obtained the security clearance to have access to MCDC)–Derrick Rasheed and Shaheed Haamid. Defendant submits evidence that during 2007, Rasheed volunteered at MCDC for about 31.5 hours and Haamid volunteered for 1.75 hours. Defendant, however, neglects to meet the Ninth Circuit's demand that defendant show a volunteer imam was not *available* during the time Woods was incarcerated. See Tyson, 360 Fed. Appx. at 901.

Page 7 - OPINION AND ORDER

The Ninth Circuit has pointed out that the government bears the burden of proving the existence of a compelling state interest and "[w]hen the moving party also bears the burden of persuasion at trial, to prevail on summary judgment it must show that 'the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" Shakur, 514 F.3d at 890 (quoting 11-56 Moore's Federal Practice-Civil § 56.13). Defendant has not met its burden.

      C.      Least Restrictive Means

Defendant reports it considered a number of options before deciding to schedule all religious activities on either Saturday or Sunday. Additionally, it reports that if a volunteer imam does not show up, the inmates are not permitted to have group prayer, but may meet informally without a leader.

Under the law, MCDC "cannot meet its burden to prove least restrictive means unless it demonstrates that it has actually considered and rejected the efficacy of less restrictive measures before adopting the challenged practice." Id. at 890 (citing Warsoldier, 418 F.3d at 1000). As the Ninth Circuit noted, there are factual disputes as to whether Christians prayed in the units every day with a chaplain and whether imams were available to lead prayer on Fridays while Woods was incarcerated at MCDC. Additionally, defendant does not explain why allowing Muslims to pray in their units on Fridays, just as the Christians do, is not an acceptable alternative.

      D.      Injunctive and Declaratory Relief

Defendant contends that any request for injunctive or declaratory relief should be denied as moot since Woods is no longer detained at MCDC.

A declaratory judgment is available only where "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Lake Carriers' Ass'n v. MacMullan, 406 U.S. 498, 506 (1972). A prisoner's claim for injunctive or declaratory relief becomes moot when he or she leaves the prison. See Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991); Nelson v. Heiss, 271 F.3d 891, 897 (9th Cir. 2001). The exception is, of course, when the action is capable of repetition yet evading review. That exception applies only when "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subjected to the same action again." First Nat. Bank of Boston v. Bellotti, 435 U.S. 765, 774 (1978); Dilley v. Gunn, 64 F.3d 1365, 1368-69 (9th Cir. 1995) (exception did not apply to prisoner). With respect to the second prong, there is no evidence that Woods has any prospect of being returned to MCDC.

In sum, defendant is correct that Woods's claims for injunctive and declaratory relief are moot.

E.  No Individual Liability Under RLUIPA

Defendant argues that Giusto cannot be individually liable under RLUIPA, although it concedes this issue has not been resolved in the Ninth Circuit. In Alvarez v. Hill, No. CV 04-884-BR, 2010 WL 582217, at *11 (D. Or. Feb. 12, 2010), Judge Brown concluded, after surveying the case law in other circuits, that "RLUIPA itself does not authorize a claim for damages against Defendants in their individual capacities." As a result, defendant requests that the claims against Giusto be dismissed.

Judge Brown explained in Alvarez that Congress enacted RLUIPA under its Spending Clause authority, which means that Congress conditions federal funds on a state's consent to suit for violations of RLUIPA.

Judge Brown's case involved RLUIPA claims against individuals at the *state*-operated Snake River Correctional Institute. Judge Brown pointed to other circuits' decisions in which the courts concluded that RLUIPA does not provide for damages against *state* officials in their individual capacities. Nelson v. Miller, 570 F.3d 868, 885-89 (7th Cir. 2009); Rendelman v. Rouse, 569 F.3d 182, 187-88 (4th Cir. 2009); Sossamon v. Texas, 560 F.3d 316, 327-29 (5th Cir. 2009); Smith v. Allen, 502 F.3d 1255, 1272-73 (11th Cir. 2007).

Although Giusto was a County employee at the time of these events, the analysis is the same. An individual defendant cannot be liable under RLUIPA because the individual defendant is not the recipient of federal funding. See Smith, 502 F.3d at 1274 ("Congress cannot use its Spending Power to subject a non-recipient of federal funds, including a state official acting [in] his or her individual [i.e. personal] capacity, to private liability for monetary damages."); Sossamon, 560 F.3d at 328-29 (interpreting RLUIPA to allow individual liability would lead to unconstitutional exercise of legislative authority). Accordingly, Giusto, as a non-recipient of federal funds, cannot be individually liable for monetary damages.

I do note, however, that there is certainly no similar limitation under § 1983 and Woods has a claim under both the RLUIPA and the First Amendment. Cf. 42 U.S.C. § 1983 (action at law lies against "every person, who under color of law" violates federal law). Under §1983, however, Giusto would only be individually liable if he caused a violation of Woods's rights. See Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (supervisor may be

liable if he was personally involved or there is a causal connection between wrongful conduct and the constitutional violation). Woods has not specified what actions Giusto took that caused a violation of his rights. As a result, I find that Woods fails to state a claim against Giusto in his individual capacity for any violation of Woods's First Amendment rights.

In sum, Giusto cannot be individually liable under the RLUIPA as a matter of law, and Woods does not state a claim against Giusto for individual liability under § 1983. Nevertheless, Woods may recover from the County on the official capacity claim against Giusto under both the RLUIPA and § 1983.

  F. <u>Only Nominal Damages Available under RLUIPA and Prison Litigation Reform Act</u>

Defendant argues that any monetary relief Woods is entitled to under RLUIPA is limited by the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. § 2000cc-2(a) (party may "obtain appropriate relief against a government"); <u>Shidler v. Moore</u>, 446 F. Supp. 2d 942, 946 (N.D. Ind. 1996) (no compensatory damages recoverable under RLUIPA). The PLRA's "limitation on recovery" provision prohibits a prisoner from bringing a "Federal civil action . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. 1997e(e). There is no dispute that Woods has not suffered a physical injury.

The Ninth Circuit has not resolved the question of whether Woods's damages are limited under the RLUIPA. Importantly, however, there is no limitation on Woods's recovery under § 1983 in the Ninth Circuit. In <u>Canell v. Lightner</u>, 143 F.3d 1210 (9th Cir. 1998), the Ninth Circuit held that the physical injury requirement set forth in § 1997e(e) does not apply to a First Amendment rights claim. "The deprivation of First Amendment rights entitled a plaintiff to

judicial relief wholly aside from any physical injury he can show, or any mental or emotional injury he may have incurred. Therefore, § 1997e(e) does not apply to First Amendment Claims regardless of the form of relief sought." 143 F.3d at 1213. Similarly, in Oliver v. Keller the Ninth Circuit held that while a physical injury was required to recover compensatory damages for mental or emotional injuries, "[t]o the extent that [the inmate's] claims for compensatory, nominal or punitive damages are premised on alleged Fourteenth Amendment violations, and not on emotional or mental distress suffered as a result of those violations, § 1997e(e) is inapplicable and those claims are not barred." 289 F.3d 623, 630 (9th Cir. 2002).

Furthermore, although the Ninth Circuit stands alone in its interpretation of the PLRA as inapplicable to constitutional claims, district courts in the Ninth Circuit have extended the Canell holding to RLUIPA claims, thereby allowing compensatory damages for the constitutional and RLUIPA violations. See Greene v. Rourk, No. CIV S-04-0917 MCE DAD, 2009 WL 1759638, at * 9 (E.D. Cal. June 22, 2009); Stavenjord v. Corrections Corp. of America, No. CV 09-0354-PHX-DGC (LOA), 2010 WL 960413, at *9 (D. Ariz. Mar. 15, 2010). In short, Woods may recover compensatory damages for the loss of his ability to practice his religion.

G.    Qualified Immunity

Defendant argues that Giusto is entitled to qualified immunity. Since I have determined that Giusto may not be individually liable under the RLUIPA or § 1983, I need not reach this issue.

II.    First Amendment

Under the First Amendment, the County's restrictions must be "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987). In determining the

Page 12 - OPINION AND ORDER

reasonableness of the regulation, the court considers: (1) whether there is a valid, rational connection between the prison regulation and the governmental interest, (2) whether there are alternative means for the inmate to exercise the right, (3) whether the impact of accommodating the asserted constitutional right will have an adverse impact on the guards or other inmates, and (4) whether there are other ready alternatives. Id. at 89-91.

Defendant offers no evidence (1) that it has a legitimate security interest in failing to accommodate an imam to lead Jum'ah prayer in the units on Fridays, (2) that Woods may engage in Jum'ah prayer in some other way, (3) that allowing an imam into the units on Fridays to lead prayer would have a negative affect on guards or inmates, or (4) that this alternative is unreasonable. Accordingly, defendant is not entitled to summary judgment on this claim.

III.    Summary

Woods's demand for declaratory and injunctive relief is dismissed. Additionally, Giusto may not be individually liable.

## CONCLUSION

For the foregoing reasons, I deny in part and grant in part defendant's Motion for Summary Judgment (#134).

IT IS SO ORDERED.

Dated this ____4th_____ day of June, 2010.

                                              /s/ Garr M. King
                                              Garr M. King
                                              United States District Judge